Good morning, Your Honor. Barry Litt on behalf of Mr. Goldstein. I would like to reserve three minutes for rebuttal. Try to keep track of the time, and I'll try to do it also. Okay. So before I started, the Court sent out an order yesterday asking us to be prepared to address an issue related to Connick. And I just wanted to see whether, as I understood the issue, and I wanted to know whether you wanted me to address that first or just address it in the course of the argument, it was whether the pleading made out a sufficient claim under Connick? That seemed to be the question, but I was frankly a little unclear. Well, just get going, and anyone want to? Right. So the main claim in this case has to do with the failure of the District Attorney's Office to maintain any system to keep track of Brady information regarding jailhouse informants. That was the claim the last time you were here also. That was, again, against the individual district attorneys, and we all know how that turned out. But this is very different because there is no immunity for entities. That's clear, and nobody has claimed otherwise. So the question here is so it is the same issue in that sense. But the claim here by the defendants below, by the county, was that basically under McMillian, the county district attorney's office is a state actor. So the first point that I want to make, because obviously the key case in this circuit that has addressed that issue, although I think in a very different context, is the Weiner case. And the Weiner case involved individual prosecutions. So the first point that I want to make really clear is that what we're talking about here, frankly, has nothing to do with even in the broadest sense with training district attorneys or how district attorneys prosecute. This is a question of whether or not district attorneys are provided tools in the same way as a computer is a tool or being able to call up a criminal history is a tool. This is just a tool. It's a tool that only the office can provide. It's not a tool that an individual prosecutor can provide and has anything to do with the judgment of an individual prosecutor. It has to do with the question of whether or not the prosecutor has the information. In Mr. Goldstein's case, a deal was made. The prosecutors prosecuting the case were never aware of it. When Mr. Fink, the informant, lied, the prosecutors had no idea that that's what had occurred, because the information, even though it existed within the district attorney's office, was never made available to them. Can I just ask you if you are aware of any other district attorney's offices that have such a database? Because I have limited knowledge, but my understanding is that it's usually police enforcement, it's law enforcement who keeps such databases, not the prosecutor's office. No. Well, the Los Angeles district attorney's office has been keeping it now for some time because this all occurred a very long time ago. The California Commission on the Fair Administration of Justice strongly recommended that every district attorney's office maintain such a piece of information. And the reason that, I mean, police departments are supposed to do that. They don't really do it either. But that's not a sufficient substitute because the problem is in Los Angeles, prosecutors prosecute from numerous different law enforcement agencies. So in order for prosecutors to do their job, even if an individual police department does it, they're still relying on whether or not that information has reached them. And if some police departments don't have it, then it falls through the cracks. And a lot of this has to do with what the prosecutors themselves have done. Right. But the database now exists because the state requires it? No. The state does not require it. The state makes no requirements of any kind. But the California Commission on the Fair Administration of Justice, which investigated this, which was headed by John Vandekamp, the former attorney general and former district attorney in Los Angeles, and of which Jerry Brown, the then attorney general, was a member, investigated the problem of the absence of providing Brady information and the use of jailhouse informants, and it made a series of recommendations. That's important in two respects. One is it shows sort of what, after careful consideration, should be done. But it's also important because it shows that these high-level people, including the attorney general, did not consider that what the district attorney did in this respect was a state action. There was a question of whether or not there should be statewide legislation. There was never a question posed of whether or not the attorney general should implement regulations requiring district attorneys to do certain things. And the reason for that is because, as the commission recognized, these are office-by-office determinations, and their view was that that was the appropriate thing, that's what it should be. But there's a difference between appropriate, what one views as appropriate, and what one can do in the exercise of power. Do you think the attorney general had the power to promulgate regulations requiring such databases? No, I do not. And why? And the reason is that when you look at the statutes, the statutes that get relied upon is the statute that talks, there's one for the sheriff's and one for the district attorney. And it's actually interesting to contrast them. For the district attorney, the power that is given to the attorney general, other than a general supervisory power, which this court has already said is not sufficient, and so did the California Supreme Court say in the People v. Brophy, it does not confer control. So the operative statute is the statute, and I forget the number, and what it says is that the attorney general has the power to direct an investigation or a prosecution. And in this respect, and I'm quoting, he has the powers of the district attorney. The importance of that is that with regard to a specific investigation or a specific prosecution, the district attorney can step in. However, the district attorney general can step in.  The attorney general is given the power to direct the sheriff's detection of crime in general. Nonetheless, this court has stated that that is not sufficient to make the sheriff's investigations actions of the state. And that is in a context where the attorney general has a greater power. So I believe that California law is very clear that the most that the attorney general has the power to actually step in and do, as opposed to assist or recommend or things like that, is with regard to an individual prosecution. That is what this court said in Weiner. The court made a clear distinction, and the holding of the Weiner case is that with regard to an individual prosecution, that is State action. We're not challenging that. And the cases in the Second Circuit are in this regard very useful because New York law is very similar to California law, the only difference being that the attorney general actually has a greater power to step in over the district attorney in New York. And what the Second Circuit has said in sort of looking at all of this, and it said it before McMillian and it reiterated it in the Myers case after McMillian, and it basically, its formulation is there is a very narrow exception for individual prosecutions. The district attorney is a local actor, is a county officer, and then it's framed that there is this narrow exception with regard to individual prosecutions. Does anyone have the authority to tell a district attorney how to conduct this office affairs? No. No one has the power to do that, including the Board of Supervisors. The way we cited to the court the case of Franklin v. Zaruba, which is a Seventh Circuit case, and I think that that sort of analyzes it in the most useful way, but this court has also said it in, I think it was in Brewster, where it said the fact that you're not a State actor, that the county doesn't control you, meaning the Board of Supervisors does not mean you're not a county actor. I believe that the correct formulation under California law is that the district attorney is an independent county official. He is independent or she is independent of the Attorney General and of the Board of Supervisors, but in the relationship, but that does not change the status as a county actor because, as this Court stated in Street, first of all, judgments are paid. That's a huge difference between McMillian and this case. The judgments are paid by the county. The district attorney is listed in the Constitution as a local official. So basically the presumption is, and this is why the Second Circuit cases are helpful, is that the district attorney is a local actor. And then the question is, are there any circumstances under which the district attorney is taken out of that? One of the fundamental mistakes that I think the defendants make, and that the California Supreme Court has made in Pitts, is that it has framed it as are you, is it more the Board of Supervisors or more the Attorney General? That's sort of been their analysis, but that's really not the correct analysis. The correct analysis is, does the State control you? If the State does not control you, the fact that the Board of Supervisors does not control you does not tell you anything because the only McMillian inquiry is whether or not the State controls you and whether you are therefore a state actor. So I believe that that is the essential framework, and under that framework what we have here is that the district attorney acts independently. Nobody has the ability, and I have scoured, I have found nothing that indicates that the Attorney General has ever taken over anything except when there's been a request. If the Court remembers when Ron George was on the bench, and I forget who it was, but he asked the Attorney General to come in when the district attorney's office declined to prosecute. In Pitts, they refer to a Kern County grand jury. Under California law, the local grand jury can ask the Attorney General to investigate, but in that case, the local grand jury asked the Attorney General to investigate. The defendants have never pointed to an actual instance where there has been the Attorney General stepping in without a request of local authorities. All right, we'll give you your time. I have two minutes and 45 seconds. Well, we'll give you your three minutes, but we may have one or two questions. I'm sorry, I just have one more question. So if the district attorney is not a state actor, but is rather an independent elected official that is not necessarily a county official, there's still liability under 1983, right? Yes. And then the immunity issue, does that make it a problem? Under Owen entities, and the Supreme Court had a long discussion under Owen, that immunity is in order to protect individual actions so that individual prosecutors ñ remember, most states are not necessarily like California where they're indemnified ñ do not feel hampered in carrying out their duties. And specifically in justifying the use of immunity for individuals, they talked about the fact that entities, government entities, do not have such immunities and listed all the policy reasons. In Connick v. Thompson, there was no question that that was prosecutorial conduct. The Petitioners asked ñ it was after the Goldstein decision. The Petitioners asked the court to take up the issue of whether or not this undermined prosecutorial immunity, and the court declined to do so. So there's no question that the court was very conscious of how the Goldstein case intersected with the issues in Connick, and basically what the Supreme Court did was it treated Connick as any other Monell case. And the question was, did you make out a Monell claim? And they answered, in that context, they didn't. But Vandekamp v. Goldstein really played no role in it, and that's not accidental. Let me ask you one more question. Just to be clear, you are not saying that you could sue the Board of Supervisors in this case for failing to take any action? We're saying that you could sue ñ not the Board of Supervisors. We've never sued the Board of Supervisors. We can sue the county because ñ Well, let me say that you can't sue the county for the act of the Board of Supervisors in failing to establish the policy. No, because the Board of Supervisors don't have the ability to set the policy. No, no. That's what I understood your position to be as in. All right. Thank you. Thank you, counsel. We'll give you three minutes. Okay. Thank you. May it please the Court. My name is Cindy Tobesman. I'm here for the county. I think that kind of the elephant in the room in this case is the Van de Kamp case. You know, the Second Circuit cases that the opposing counsel has talked about are, I think, of limited use, partly because a lot of them came before McMillian, and certainly all of them came before Van de Kamp. And I think in the wake of Van de Kamp, you really can't get away from the concept that prosecution includes policymaking that impacts prosecution. And as the Van de Kamp court made clear, this makes sense, because otherwise you end up with these sort of absurd results where if you have a kind of local, a small DA's office where there's just a few people and you're sitting around talking about how to handle exculpatory information, then that would be prosecution. But if it's bigger, if it's a bigger office and I put it in a memo and I send it out to a bunch of people, suddenly that's policymaking and now it's an administrative thing and it doesn't apply. And so I think that in the wake of Van de Kamp, I think that what's really going on here is that the other side is asking you guys to repudiate Weiner. And Weiner, and they've said they're not challenging Weiner, but Weiner squarely holds that prosecution is State action. And in the wake of Van de Kamp, I think you can't get away from the idea that policymaking falls within the ambit of prosecution. And so at the end of the day, what they're asking you to do is to say, well, you know, try to thread the needle somehow and say that policymaking doesn't fall within the ambit of prosecution. I just don't think you can get there. Now, on the question that the Court had about whether the AG would have had the power to promulgate such databases, I think it's a, you know, really at the end of the day that's kind of where the rubber meets the road. And on that question, I think it's fairly clear that they can. The fact that they haven't doesn't mean that they can't. And I think it's fair to say that if you go through the various statutes, constitutional provisions, case law, there's a very tight bond between the DA's office and the AG. And among other things ---- I know there's a tight bond, but that's maybe different from having the power to tell local DAs how to conduct their job. Well, I think that when you have the power of supersession where you can step in and think that they're not doing a good job prosecuting their cases, it certainly is sort of Damocles hanging over them if you don't do these things. He may be framed as recommendations, but you'd be hard-pressed not to implement them if you were the local DA's office. Kennedy, can the State take over the DA's office if it's not doing its job properly? Well, I don't know that that has ever occurred. I don't see any reason why it couldn't. Under the power of supersession, again, the difference between a large DA's office where you're coming in and taking over just a couple of DA's cases versus coming in and taking over an office, I don't know that there's a principle basis for drawing a distinction between those two. Isn't your DA's office an elected office? The DA's office is an elected office. But under the State's constitution and statutory scheme, they answer to the AG. The AG is the chief law enforcement officer in the State. They're allowed to, you know, require them to make reports, to collect data. They can conference with them. They can assist them in any case. They can take over any case. There's the whole system of ---- Well, I guess you didn't mention in that, you didn't say they can require them to adopt policies. Well, I think that in the McMillian case law, there's a recognition that you're not ---- it's rare to see in a State's legal structure anything as clear as that. I mean, that would be nice if the State laws spoke very clearly on the subject. But I think what the McMillian analysis requires is kind of you do your best job at figuring out how the State has structured itself. And on that subject, you have to ---- Do you think the Attorney General of California can make the decision that no death penalty cases are going to be prosecuted in the State of California and force local DA's to adopt that policy? I think you'd run into some problems with various propositions and laws. The AG has an ---- No, I mean, if you're saying the direct ---- you know, if the ---- what would stop the ---- if the Attorney General has the powers that you say, what would stop the Attorney General from doing that? Well, I think the AG is obligated to uphold the laws in the State of California. They can't kind of go off the rails and decide what the policy of the State is going to be, where it runs about, you know, State statutory. Well, nothing compels anyone to charge a capital case. That's up to discretion of the prosecutor. Oh, I understand. So whether or not they're going to have a policy of prosecuting capital cases or not. Yes. I mean, so we're not going to ---- I'm not going to permit any ---- I'm going to take over every single prosecution in the State of California in which the death penalty is sought, and we're not going to seek the death penalty. I don't see a reason why they don't have that power. In the State ---- in the way the statute ---- in the way the statutory constitution that the State of California has set up, they answer to the AG at the end of the day. He's the chief law enforcement officer. He or she is the chief law enforcement officer of the State. So you think the AG has the power then to say, all right, we're going to maintain an open file system of disclosure on Brady? I think they absolutely could. And do they promulgate a rule? And they would presumably promulgate a rule. Do you have any examples of when any attorney general has promulgated a rule as opposed to just giving advice? I haven't, but I also don't know of a situation where the AG has given advice and the DA has said, no, we're going to go a different direction. I mean, you have this ---- you have the system where there's, you know, reams of instances where DAs are seeking direction from the AG. You know, how do we handle fingerprints? What do we do? We've cited in my page 40 and 41 of our brief where they're asking the AG for guidance on subjects that are really, how do we handle our office? How do we handle stuff that relates to policymaking with regard to prosecution? And I think that that conversation, that looking to the AG for how do we handle  I think the underpinnings of that are these broad powers that the AG has, supersession, calling into conference, the ability to oversee cases. I mean, these are the things that underpin those conversations between the DA and the AG. And the reason why the DA is looking to the AG for advice on these things is because at the end of the day there's a recognition in the State of California that the AG controls these things. And whether they've exercised those powers isn't at the end of the day the question. It's whether they have the power to do those things. And certainly the Pitts case, you have a California Supreme Court case that very carefully goes to here's the entire body of law as we understand it, and on this precise issue, policymaking with regard to prosecution, the California Supreme Court has stated very clearly that the DA is a State actor. And I understand that this is a Federal court, it's a Federal claim, but I think on this issue the Pitts case should at least be weighed very heavily in the equation that this is how we structure our government. This is how California has created its sovereign right to structure itself how it pleases, and this is how it works. And the fact that whether the power has been exercised or not, while an interesting academic question, at the end of the day there's an answer to the McMillian analysis, which is who do they answer to? How is the State government structured? And that's the real question. And I'd also like to say that to the extent that, you know, if you agree with me on the aftermath of Vandekamp, that there's no real difference between policymaking and prosecution, I would suggest that it's really an appropriate en banc question rather than for this panel to decide on. And I would like to say a word about the Connick case, unless you have further questions on it. I think the Connick case is inact, and the reason is that in Louisiana, there's no question that the DA answers to the parish. And this is in, if you look at the district court case in the Connick case, the West Law Study, it's about page 9, it's a case called Bergey, and it's a Fifth Circuit case, and it's an 11th Circuit immunity, sorry, 11th Amendment immunity case. But it seems to be fairly well established in the State of Louisiana that the parish controls the DA. So there's no question in that case, as there is here, about whether or not the DA answers to the State or to the county. And so regardless what Connick says, it doesn't shed any light on the question before this Court. So here L.A. County DA's office now does have the database, and that's on the recommendation from this commission. Do the other counties also have a database? I don't know, Your Honor. If they don't, can the AG's office require all the counties in the State of California to maintain a database? I believe that they could. So why haven't they? I don't know. I don't know the status of it. My little ñ my narrow universe of legal knowledge. If there are no further questions, I'll submit. Thank you, counsel. So there are four points I'd like to touch on. The first is Weiner. Weiner does not stand for any broad proposition. Here is a quote from Weiner. Under California law, a county district attorney acts as a State official when deciding whether to prosecute an individual. That's all that Weiner stands for. Opposing counsel raised the question of supersession. This is from the California Supreme Court's decision in People v. Brody in discussing supersession, which allows the attorney general to take over an individual case. Quote, even this provision affords no excuse for a district attorney or sheriff to yield the general control of his office and duties to the attorney general. Quote. With regard to the question of the power of the attorney general, the CCFAJ is very important because it could have said we have the power to do this, but for policy reasons we're not going to do it. Instead, what it said was we considered whether we should pass statewide legislation implying that there wasn't a power to do it. If they wanted to do it statewide, they had to pass legislation and concluded we wouldn't. If, in fact, anybody on that commission thought that the power existed for the attorney general, then it wouldn't have been about whether we pass statewide legislation. It would have been whether the attorney general does this. Finally, with regard to Pitts, we've argued this at length in our brief. Basically, Pitts is a case that is applying the same law that this Court has applied. It's no secret that this Court has departed from Pitts and that Pitts has basically said it disagrees with this Court. But when it disagrees with the Court, it's not because there was no recognition of the California statutes or provisions that were relevant. It's because the California Supreme Court applied Federal law differently. It applied the factors going to whether you're a State actor. So Pitts has no meaningful persuasive effect because its analysis is wrong and this Court has so recognized. Thank you. Thank you, counsel. The case is argued and will be submitted.
judges: Navarro, Reinhardt, Thomas